Indemnity Company, which does business as Blue Cross and Blue Shield of Louisiana, or what I will call Blue Cross. The primary issue in this case is whether Blue Cross properly removed this case to federal court under the Federal Officer Removal Statute 28 U.S.C. 1442, and I'm going to focus almost exclusively, if not exclusively, on that question as opposed to the other three possible grounds to get out from the Attorney's Fee Award, because we believe the Federal Officer Removal position is so strong here. But it's a position and an argument that the district court did not grapple with at all. In fact, the district court doesn't even mention the applicable test. Before I get into the legal test, I'd like to outline some of the key facts, although many courts before today have done that already, including in the Goncalves case in the Ninth Circuit, the Jacks case from the Eighth Circuit, and even the Helfrich case from the Tenth Circuit, which doesn't deal with federal officer removal but goes into quite a lot of detail about this program. And I think it's quite clear that Blue Cross does act under the federal government, particularly the Office of Personnel Management, in running this federal program. OPM has exclusive authority to run this program, to contract with carriers, and has very broad policy. You know, there's been a raging debate about the causal nexus test in Federal Officer Removal statute cases in this Court, beginning with Bartel, the raging debate about the effect of the 2011 amendments, beginning with Bartel, which did not discuss it, and then you have Zeringue and so forth, and Latiole recently addressed this. Y'all didn't talk about that at all. You acted like everybody knows what that is. Well, let's just say the majority opinion in Latiole didn't think that everybody knows it. So why has that not been addressed and how does that intersect with your position? Well, I think the short answer is it's not particularly relevant here, in part because the case in favor of Federal Officer Removal is so strong, we essentially took the position in the briefs that even if you forget about the 2011 amendments, which I think very clearly expand the scope of the statute, as this Court said in Zerang, in no uncertain terms, but that even under the prior language, this case would be safely removable under — and there are really sort of two separate reasons for that, both the specificity of the instructions that Blue Cross gets from the Federal Government, as well as the general legal notion that even under the old test, there's no requirement for specific direction on behalf of the Federal Government. You just have to be acting generally under the direction or guidance of the Federal Government. Yeah, but that is not what Bartel held. I mean, so in Bartel they said even though you're working for the Navy and building the ship and all this with the asbestos, nothing prevented you from warning the people working on the ship about the dangers of the asbestos. Okay? So here, what prevents Blue Cross, the fact that they're allowed to pay the insurer directly, what prevents them from paying the hospital? So let me answer that factual question, because I think this factually is — it's not like claims that are addressed in — well, they're addressed in all these cases. It was waived in Bartel, of course, but it's addressed in Savoy and in some of the other cases. So let me walk you through the provisions. So on page 319 and 3 — I'm sorry, 484, the Statement of Benefits, or brochure, which is the booklet that goes to the subscribers and is part of the Federal Government contract and is authorized for release by the Federal Agency OPM, says — and I know this doesn't specifically answer your question, Judge Haynes, but I'm building up to it — it says that Blue Cross reserves the right to pay you, the enrollee, directly for all covered services. And then the contract itself says the carrier reserves the right to pay the member directly for all covered services. That's at page 76 of the record. And then at page 94 of the record, the contract says benefits provided under the contract are not assignable by the member to any person without express written approval of the carrier, and in the absence of such approval, any such assignment shall be void. And here, there is no written approval by the carrier, and so the answer has — And that's required by OPM? Correct. This is in the Federal Government contract that the Blue Cross — The Federal Government requires that Blue Cross have that provision. Correct. And if you look, this is in the actual — Blue Cross pays the carrier — I mean, the provider all the time. Well, so I was about to get to that. Okay. You're very, very insightful, Judge Haynes, for noting that. So what's the issue here? At some level, you might think, well, is there some discretion in terms of who Blue Cross pays? But the ultimate answer is actually no, because the ability to sometimes pay the provider and sometimes not pay the provider depends on whether or not the provider is a so-called participating provider or a PPO provider. And this is addressed specifically in the Federal plan. So if you look, for example, at record page 188 and 189, it describes the notion that there is this network of contracted providers. And here's what it says. Remember, this is part of the Government contract. It says of PPO providers that are referred to as preferred providers, quote, they will generally bill the local plan directly. The local plan is Blue Cross. That's defined in the plan itself. The definitions you can find for that are on record page 322. It says they will bill — generally bill the local plan directly, who will then pay them directly, as in the providers. Then there's another provision about participating providers, which is sort of a — they're contracted providers, but they're not in this preferred PPO network. And it says we pay them directly. We is also defined at record page 327 to include the service benefit plan as well as the local plans like Blue Cross that administer the plan. And then, turning on record page 189, it describes non-participating providers. And here's what it says. We will then pay our benefits to you, which is defined to mean the enrollee, and you must pay the provider. Again, mandatory language. So some of the language in the contract appears to give discretion generally, but this more specific language says you have to pay the member directly in — if there's a non-participating provider, and you have to pay the provider directly if it is a participating provider. And there's an important federal interest behind that. That is, it drives costs down. If you incentivize a provider to sign up and be a contracted or participating provider, they agree to accept a lower amount. This is also described right in the plan itself at record page 188. And so the federal government wants the carrier to do this. It wants to incentivize providers to sign up and accept lower costs. And one of the incentives to get providers to do that is to say, well, we'll do something convenient for you. We'll pay you directly. But — so I think as a factual matter, this is — the instructions here are even more specific than in cases like Bartel. But I — there's another important issue, which is — I'm looking — it took me a minute to get this to come up, but I'm looking at ROA-94, which was the thing about the benefits provided on the contract are not assignable without express written approval of the carrier. Isn't the carrier Blue Cross, or is that — Well, technically, the carrier is Blue Cross and Blue Shield Association, which is a nonprofit entity — But that would still give them the right to approve that if they wanted. I mean, I'm still trying to make the parallel between — while the Navy never said to Bartel — the Bartel company — I can't remember the name of the company — that they had to give any warnings to anybody, they didn't prevent it. So this doesn't prevent the Blue Cross Association from approving the assignment, right? But you're saying something else does. Correct. The non-PPO cannot be assigned. Exactly. So this is sort of meaningless about the written approval of the carrier. There is no such thing. Well, it's — that's not true. It is meaningful in a general sense. But the written approval of the carrier, for example, might come in the form of an agreement with the provider that says, hey, we will accept your assignments, we will pay you directly if you become a participating provider. So I think that specific language that I read from pages 188 and 189 about you must pay the provider if they're participating or preferred, and you must pay the individual if not, is just an instance of that more general language of page 94. Okay. So that's not giving the discretion it seems to because it's limited by later. Exactly. Okay. But I do want to return to this fundamental legal point. We've been talking about the facts, and I think we've shown already that we would meet the tests in Bartel. But as a legal matter, Bartel never says you have to have specific Federal direction, that you must do this or you cannot do this. Bartel certainly notes that that was the case there. But a number of this Court's cases specifically say you do not have to have Federal direction. And this goes back before Bartel. So if there's an issue of the rule of orderliness, it wouldn't be Bartel that governs on this point. Of course, the Court after Bartel and Zerang specifically says that you do not have to have precise Federal direction. And the Court says that twice, once in connection with the acting underprong of the test and a second time under the causal nexus test, which, Judge Haynes, we've been discussing a lot. And, in fact, the Court in Zerang says that that would be inconsistent with the plain language of the statute because it would essentially mean you have to prove your Federal defense instead of just having a colorable Federal defense. Yeah. Let's talk about that because I didn't mean to monopolize the issue on Bartel. I just wanted to – wondered if this raging dispute makes a difference here, and you'd say no. But let's turn to sovereign immunity. How does Blue Cross have sovereign immunity? Well, the Blue Cross doesn't pay these claims or anything at all in connection with this program out of its own funds. It pays the money out of a Federal letter of credit account, which is held in the Federal Treasury. It has direct access to that Federal Treasury account. And the Court in Jacks and Halfridge go into quite some detail about how this works. And if there's money left over in that Federal Treasury account, it belongs to the Federal Government, not Blue Cross. So it's playing with the government's money in essentially all things that it does. This Court in Houston Community Hospitals noted in a footnote, I think it's footnote 56, that four justices in the Supreme Court in the Empire case specifically said that the Federal Government is a real party and interest in FIBA cases because that's where the money comes from. And, of course, we cited five district courts, all of which have upheld the Federal sovereign immunity defense on the specific ground that it was the Federal Government's money at issue, and there are no cases that we're aware of on the other side. This Court, of course, in Omega, granted it's an unpublished decision, also found that that was sufficient to at least come up with an objectively reasonable basis for removing the case. And Jacks, in the — in Jacks, the Eighth Circuit said that sovereign immunity was, in fact, a colorable defense for purposes of the Federal Officer Removal Statute. So there's all of this law on one side and nothing that we're aware of, at least on the other side. But I do want to go back, Judge Haynes, to your point about the causal nexus issue, because, as I mentioned, there are cases that predate Bartel that I think tell quite a different story. We cited one, Bell v. Thornburg, and the facts there are quite clear that there was no specific Federal direction at all. It was an employment discrimination case by a Chapter 13 standing trustee who was a private citizen but essentially worked under the U.S. trustee, who was an employee of the Department of Justice. And the plaintiff sued the standing trustee, this private citizen, for allegedly firing her on the basis of race. And it's quite clear that no Federal officer at all ordered that the employee be fired. There was a group, the National Organization of Chapter 13 Trustees, that, as the Court says, suggested that she be terminated. But the standing bankruptcy trustee declined to do that at first, put her in a new position, and only later fired her. And here's what this Court says upholding the removal. Removal was proper based on the standing trustee Thornburg's allegation that, quote, or his, quote, employment actions relative to Bell, who is the plaintiff, were performed under the color of his office in the performance of his duties thereunder after input, not direction, input from the peer review process and involving communication with and involvement of the United States trustee and a United States bankruptcy judge. Again, no specific direction was required in Bell v. Thornburg in order to find the case properly removed. And, of course, many other courts, including Bell and Goncalves have — I'm sorry, Jackson and Goncalves have specifically addressed this issue of discretion and have found that even if the removing party has some discretion, that's still okay. And if you look back, this goes back many years, the fundamental test is, were you acting within the scope of your employment? Even if it's a discretionary act, was it something within the scope of your employment? And Zereng says this at page 793, citing a case from the 1960s, Allman v. Hanley. This court in Bell v. Thornburg said it at pages 90 and 91. And in the 70s, this court said it in Peterson v. Blue Cross and Blue Shield. So the test does not require that the Federal Government specifically command that, hey, removing party, you shall do this. Okay. Thank you. Thank you. You've saved time for a photo. Mr. Sherman, when you're ready. Good morning, Your Honors. Matthew Sherman on behalf of St. Charles Surgical Hospital. This lawsuit is strictly about Louisiana law. Your Honors, this lawsuit is about Louisiana revised statute 402010. This is an independent legal duty on behalf of Blue Cross Blue Shield that when they receive an assignment of benefits from a provider, such as our client, St. Charles Surgical Hospital, they pay the provider directly. That is all that this case is about. This is the second time Blue Cross Blue Shield has remanded a case against St. Charles Surgical Hospital. Pretty much the exact same petition was filed. It's our position that both district and state case involving who pays the fee. But they're saying it directly conflicts with Federal requirements, which is this whole business of the PPO versus the non-PPO. And, Judge Haines, I think you hit that right on the head in the very beginning. The contract does not tell them that they cannot pay providers. If we were here based on Federal employees only, why haven't they paid the 65 non-Federal employment patients or Federal employee patients of St. Charles? We have 70 potential claims. Five of them — That just means you might win your lawsuit on those. It doesn't answer which court should hear the lawsuit. And I believe that our position is that the Federal Government, OPM, is not controlling them. This is a systematic business decision that Blue Cross Blue Shield has made. We believe, and this goes more towards the merits, that they're not paying St. Charles Surgical Hospital because they're not networked. This is a business decision to get them to come into network. And they're saying that it's not a network and that justifies them under the Federal law, at least with the Federal employees. I'm not getting into the merits as to anybody else, or really the merits as to the Federal employees. It's just, is that enough of a link, a hook, to make the Federal officer removal statute come into play? And, of course, we would disagree with that. We think the Rapides case cited by the Fifth Circuit is on point, although that deals more with ERISA. It should be the same principle. Judge Owens, in the Rapides case, in her concurrence opinion, states that the Louisiana statute does not enlarge the rights, causes of actions, or remedies of beneficiaries or their assignees. Section 402010 simply directs to whom payment must be made once there has been a valid assignment. This is simply, we're not here for determination of payment. But you haven't really rebutted the notion that the Federal Government has decided they percentage of the health care costs or insurance costs for its, their employees. They want to govern that. The Federal Government likes to govern what they spend money on. And so they have a set of rules that maybe would not apply to, you know, ABC Corporation that just is having employees that have a health care policy that would be covered by ERISA. So ERISA and the Federal Government running the show are two really different concepts to me. Right. And we don't believe that the second factor, the second third factor, corporal Federal defenses, we don't believe apply, but we're focused on the control. We don't believe, it's our position, that the Federal Government is not telling them they cannot pay these different claims. They've told us it's discretionary and they have to get prior approval. But if that, again, if that were the case, then all of the non-Federal employees should have been paid. What's the explanation for the non-payments, the 65 or so? But that's separate from whether the case can be removed, whether they'll win the case. Right. Believe it or not, you can win in general court. It has happened. So the fact that you may be able to prevail on parts of the case or the whole case doesn't alter whether it's removable. Right. And we believe, Judge, that we believe the Fifth Circuit case in Rapides is the most applicable. The case that Blue Cross decided out of the Eleventh Circuit is an unpublished opinion. It stops short of a complete analysis of the Federal officer removal statute. They don't get to the Federal recolorable defenses. But, Your Honor, the contention that the district court did not address the present argument is untrue. They didn't do a full analysis, but they certainly addressed it and cited it to the transitional hospitals cases and other Eastern District cases that stand for the proposition that ---- And I think the Eastern District of Louisiana is amazing, but we are not bound by their binding authority. Is there on us that you win? The Rapides case is most similar. We would agree that it's Rapides versus the Eleventh Circuit unpublished opinion and anesthesiology associates, which we don't believe is applicable. We believe that the Rapides whole of the rationale is the most binding. What about would we be creating a circuit split with Goncalves and Jax if we were to rule to affirm? In our position, no, Your Honor. We believe that this is solely the 402010 assignment of benefits. Those are dealing with subrogation and other issues which are distinguishable from this case. And, again, the principle or the control issue here is distinguishable from the other cases. I mean, where do you distinguish them? Because I didn't ---- I looked at your table of authorities and I didn't see to where you cited them. Maybe I missed it. But it didn't look to me like you did. Absolutely. Because I was looking for your distinction. If we didn't, Your Honor, then I must have got ---- I read over there. That's just my notes that I'm looking at. Okay. So your distinction is that those are subrogation cases. What difference does that make? Why does that mean that they're not relevant here? Again, it's just the issue in this case, the control that the Federal Government has, we don't believe they've satisfied that burden. We don't believe that they've met that. And that's, again, the Rapides Fifth Circuit case, although ERISA, we believe, is more controlling. The Eleventh Circuit unpublished opinion case, as I've said, it just stops short of a complete analysis of the Federal Government. Well, ERISA governs any, you know, company. It's not limited to the Federal Government. So I'm trying to understand why that would answer the question of whether OPM is running the show when we're talking about Federal employee health care insurance. Right. And as you were talking about earlier with the Bartell case, there's nothing in this contract that says that they cannot pay these providers. Well, we just read that thing about, you know, the issue being how much control does Blue Cross have to go against this PPO versus non-PPO scenario. And we just don't believe that the control in terms of the Federal Office of Removal Statute, they've satisfied that burden. We believe that the district court got it right. Is that true even if the 2011 amendments loosened the causal nexus standard more than Bartell thought? Yes, I do. Again, it's the question, I think, in this specific case is why have they not paid these other claims? I think that's the big... I just don't, respectfully, and maybe my colleagues see it differently in that, I would respect that, but I don't see that as the question for the removal point. I see it as a merits question that could be very good for you, but I think the removal question is because there would be jurisdiction over the whole case if you have a piece of it that's removable, right? And so here the question is, because there are, in fact, you don't dispute, Federal employees involved in this case or their claims, if you will, then if that's removable, then that's the end of this part of it. You may then, if we found it removable, go back to the district court and argue why, well, look at this, they didn't do this, they didn't do that, but I guess I'm not understanding why their failure to pay the other claims means the Federal side of this is not removable. And again, the same thing that I repeat, I know it's not directly on point, but it's a hard question for us, it's a hard burden that we've addressed, but again, we believe that Blue Cross is acting independent of the Federal Government, and that's why I keep referring to these other claims, and that's, this specific case, we believe that they're not acting under the control of the Federal Government or else they would have paid the other claims, and therefore a Federal Office of Removal statute has not been met, the second factor. And in conclusion, just regarding the attorney fees, this is the second time, same party, same lawsuit, we believe that the attorney fees award was reasonable, and that that... Well, the amount might be reasonable, but is it reasonable to assess it? We believe so, Your Honor. We believe that this is now the second time against this party, there's other cases out of the Eastern District on point, and so we believe that the district judge properly awarded attorney fees. Okay.  Any other questions? Thank you. Your Honors, I just want to address a couple points. St. Charles Surgery Hospital just talked about Rapide's case as being their best case, but I think that's quite telling, because as you probably know, that is not a Federal Office of Removal case. It has nothing to do whatsoever with the Federal Office of Removal statute, and is only potentially relevant with respect to the second of Blue Cross's three Federal defenses, and that is talking about sovereign immunity. Preemption is the second one, and Rapide's, of course, does say that there's no ordinary preemption by ERISA, and our view is simply that it's different under FEBA. That's a Federal program, where the presumption against preemption doesn't apply. You're addressing his claim about the appropriateness of the attorney fees? Is that what you're addressing now? I may be... No, I'm sorry. I was just... He mentioned, he said this is the second time with St. Charles, and that's why the attorney fees were justified. Well, I believe the other St. Charles case didn't involve Federal Office of Removal, either. That's why I was asking if that's what you were addressing, because I thought that's what you were saying just now. I might have misunderstood you. Those are actually two points, but it seems it's the same answer. All right. You're distinguishing Rapide's as an ERISA case, and you're saying the other St. Charles case was not involving a claim of Federal Office of Removal. Exactly. Okay. Just to be clear, St. Charles cites only three Federal Office of Removal cases. They're all district court cases. They're all discussed in footnote 69 of our reply brief, and none of them look like this particular... So then would it be true that we would be creating a circuit split if we were to affirm? Absolutely. There's just no question. Are there any circuits that have gone their way on this? Because then we're not creating the split. We're just picking sides. You're saying all the circuits that have decided this, granted it was in the subrogation context, at least in Gunn College and Jax, but anyway, the circuits that have decided it, they've gone your way. There haven't been any circuits that have decided the other way on the Federal Office of Removal. That's correct, Your Honor. So you would be creating the circuit split on this. What's your answer to his kind of merits argument that, well, if it's all because of OPM breathing down your neck, why aren't you paying these other people who have nothing to do with OPM? Well, two answers. The first is the one that you gave, Judge Haynes, which is that's just not relevant. That's a merits question, and it could be because they made a mistake or didn't want to or who knows, and that can be discussed on the merits. But there is a reason. And if you look at the Rapides case, the Rapides case says that there – it talks about the fact that there were anti-assignment provisions in the health plans and doesn't honor the anti-assignment provisions, which would have trumped the assignments, because the plan terms said if any provision in this plan is in violation of Louisiana law, then the plan will be reformed to conform with Louisiana law. So it may be that there are some plans, even ones involving other states, the blues, transfer claims under something called a blue card program. But there may be other plans that have different anti-assignment provisions that would yield a different result. Well, I'm from Texas. If I fell and hurt myself and ended up at St. Charles Surgical Hospital, I would be construed under the Texas version of whatever plan I have. And so St. Charles may be getting paid in that context, even though I fell in Louisiana? Exactly. Is that the argument? Exactly. I'm not saying that Louisiana law does or doesn't apply to me falling in Louisiana. I'm just saying that's your point. Exactly. Because that person's health plan is a Texas state health plan. I don't know, but that's definitely a possibility here. Somebody will eventually know because it's either going to go to state or federal court and you're going to have to defend this. Correct. And I think it's worth going back and just focusing on Jackson and Goncalves, which don't really get into the weeds of subrogation, which is what both of those cases were about. They focus more on the way the overall program works and the fact that OPM has very strong supervision over the Blue Cross entities. And I want to close just with this notion, Judge Haynes, that you brought up about do you need this specific federal direction? And, of course, Jackson and Goncalves absolutely say no. Zerengi, by this Court's decision, absolutely says no. Bell v. Thornburg from this Court says no. But we tell this interesting story from this Davis v. South Carolina case in our brief that it was an old Supreme Court case that the Supreme Court much more recently in Watson discusses where somebody is sort of deputized, a private citizen, goes around to the back of the house and accidentally shoots the guy trying to escape. And there was clearly no federal direction that he shoot the person, and the Supreme Court said you can remove under the Federal Office of Removal of Statute anyway. Thank you. Okay. Interesting case. Thank you. We have your argument. And that will conclude the arguments before this panel for today, and we'll resume tomorrow at 9 a.m.